UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS



Jose Maria DeCastro,
Plaintiff,

v.

Joshua Abrams, an individual,
Dale Hiller, an individual,
Katherine Peter, an individual,
John Does 1 through 5,
Defendants.

Case No.: 1:25-cv-11610

FIRST AMENDED COMPLAINT FOR:

1. Defamation (Per Se and Per Quod)

2. False Light Invasion of Privacy

3. Intentional Infliction of Emotional Distress

4. Civil Conspiracy

5. Republication of Defamation

6. Costs and Fees

Plaintiff Jose Maria DeCastro ("Plaintiff"), appearing pro se, alleges as follows:

JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(a) because the matter in controversy exceeds $75,000 and is between citizens of different states. Plaintiff is a citizen of California. Defendants are citizens of Massachusetts (Abrams, Peter), the

District of Columbia or another state (Hiller), and the identities of John Does 1 through 5 will be determined upon discovery. Complete diversity exists among the named parties.

2. Venue is proper in this District under 28 U.S.C. §1391(b) because the acts giving rise to the claims occurred in Massachusetts. Defendant Joshua Abrams resides in Massachusetts and hosted and published the defamatory video while in Massachusetts. Defendant Katherine Peter also resides in Massachusetts. Defendant Dale Hiller's residence is currently unknown but believed to be Washington, D.C.; however, he purposefully directed defamatory content into Massachusetts and participated in a livestream coordinated with Massachusetts residents. Defendant Hiller's actions meet the "effects test" set forth in Calder v. Jones, 465 U.S. 783 (1984), by intentionally causing harm to Plaintiff in the forum state. The Court therefore has personal jurisdiction over all Defendants.

PARTIES

3. Plaintiff Jose Maria DeCastro is a resident of California and a digital content creator, journalist, and civil rights activist.

4. Defendant Joshua Abrams resides in Massachusetts and operates the YouTube channel "Accountability For All."

5. Defendant Dale Hiller is an American citizen and United States veteran who operates the YouTube channel "LackLuster." While his precise state of residence is presently uncertain, he is believed to reside in Washington, D.C.

6. Defendant Katherine Peter resides in Massachusetts and operates the YouTube channel "Troll Mafia Official."

7. Defendants John Does 1 through 5 are individuals whose identities are unknown but who contributed to, promoted, or republished defamatory content described herein.

FACTUAL ALLEGATIONS

8. On or about June 10, 2022, Defendant Joshua Abrams published a livestream on YouTube to an audience exceeding 25,000 viewers. Additionally, on June 18, 2025, Defendant Abrams published a second video on YouTube that repeated and expanded upon many of the same defamatory statements. This more recent publication further accused Plaintiff of grifting, solicited donations based on these defamatory claims, and reignited public ridicule. Both videos were widely disseminated and contributed to the ongoing reputational and economic harm suffered by Plaintiff. In that video, Abrams made multiple false and defamatory statements about Plaintiff, including:

a. Referring to Plaintiff as a "vexatious litigant," falsely implying that Plaintiff has been judicially declared to abuse legal filings;

b. Claiming Plaintiff threatened to report Abrams to his parole officer to coerce the removal of a video;

c. Alleging that Plaintiff regularly engages in blackmail and extortion;

d. Stating that Plaintiff fraudulently purchased YouTube subscribers;

e. Accusing Plaintiff of committing assault and battery on a woman in public;

f. Claiming Plaintiff has multiple unnamed victims and is involved in undisclosed court cases;

g. Stating that Plaintiff uses "sock accounts" to impersonate others;

h. Stating that Plaintiff is "a cancer to the First Amendment community," "a legend in his own fucking mind," and "borrowing from Peter to pay Paul."

9. On the same livestream, Defendant Dale Hiller endorsed or affirmed these accusations, and personally alleged that:

a. Plaintiff threatened to choke another creator's wife;

b. Plaintiff attempted to show up at Hiller's residence uninvited;

c. Plaintiff is dangerous and capable of harming others;

d. Stated "there are victims" in ongoing court cases related to Plaintiff.

10. Defendant Katherine Peter has made and republished similar defamatory statements, including:

a. Accusing Plaintiff of operating fraudulent businesses structured as Ponzi schemes;

b. Claiming Plaintiff falsely secured investment funding under fraudulent pretenses;

c. Asserting Plaintiff committed blackmail and extortion against other creators;

d. Implying Plaintiff has a pattern of fraudulent business activity.

11. These statements are demonstrably false and were made of and concerning Plaintiff, as they referenced Plaintiff by name, image, and public profile, and were understood by audiences to pertain directly to him. As evidence, Plaintiff has secured sworn declarations and receipts, including:

a. See Exhibit 1: Declaration of New Hampshire host, confirming Plaintiff was never asked to leave, did not stay at a hotel, and did not leave paraphernalia in the home;

b. See Exhibit 2: Declaration of California-based technologist, who confirms no investor money was accepted and no fraudulent app interface was ever created or presented to investors;

c. See Exhibit 4: Hotel receipts documenting Plaintiff's payment for lodging, contradicting the claim that Plaintiff failed to pay;

d. See Exhibit 5: Cash App transfers from Plaintiff to Defendant Abrams in 2022, establishing that Plaintiff paid for shared expenses.

12. The Defendants' statements were made maliciously and with knowledge of their falsity or reckless disregard for the truth, with the intent to harm Plaintiff's personal and professional reputation. The videos remain public and continue to accrue views and comments.

13. Plaintiff has experienced reputational damage, economic loss from brand harm, and significant emotional distress as a direct result of these coordinated attacks.

14. Defendants Abrams and Hiller republished these defamatory claims on multiple occasions, in concert and with mutual encouragement, further amplifying the damage to Plaintiff.

15. Defendants John Does 1 through 5 are believed to be individuals based in the United States who participated in the creation, amplification, or dissemination of the defamatory material at issue. Their exact identities and state citizenships will be determined through discovery. Their involvement does not destroy complete diversity at this time.

16. Plaintiff is a private figure, not a public figure or public official. Plaintiff has never held elected office, declared candidacy for any political position, raised campaign funds, or engaged in the political process beyond ordinary civic participation. Plaintiff's content creation activities focus on constitutional education and civil rights advocacy, which do not constitute the type of public prominence that would render him a public figure under applicable First Amendment jurisprudence. Therefore, Plaintiff need only prove

negligence, not actual malice, regarding Defendants' fault in publishing the defamatory statements.

## DAMAGES

17. As a direct result of Defendants' defamatory statements, Plaintiff has suffered: a. Reputational harm and loss of professional credibility; b. Decreased viewership and subscriber engagement on digital platforms; c. Loss of potential business opportunities and collaborations; d. Emotional distress, anxiety, and Fear of Future losses; e. Costs associated with attempting to mitigate the reputational damage, including platform moderation and counter-messaging efforts; f. A verified drop of 402 subscribers occurred on Plaintiff's YouTube channel between June 17 and June 20, 2025 (see Exhibit 3, YouTube analytics screenshots), following the June 18, 2025 broadcast by Defendant Abrams in which he falsely accused Plaintiff of fraudulently purchasing subscribers. This visible public loss in support directly correlates with reputational harm, diminished credibility, and economic damage tied to reduced audience engagement and monetization.

## COUNT I – DEFAMATION (PER SE AND PER QUOD)

18. Plaintiff realleges and incorporates by reference all preceding paragraphs.

19. To establish a claim for defamation under Massachusetts law, a plaintiff must show: (1) a false statement was made about the plaintiff; (2) it was published to a third party; (3) the publisher was at fault for making the statement; and (4) the statement either caused

economic harm or was actionable without proof of economic loss (defamation per se). See Ravnikar v. Bogojavlensky, 438 Mass. 627 (2003).

20. Defendants made knowingly false statements about Plaintiff, including but not limited to allegations of criminal conduct, fraud, threats of violence, blackmail, extortion, and impersonation. These statements were made publicly, maliciously, and with reckless disregard for the truth.

21. Several statements constitute defamation per se because they accuse Plaintiff of crimes, professional dishonesty, and immoral conduct, including assault, fraud, blackmail, extortion, and impersonation. Under Massachusetts law, statements imputing criminal conduct, professional dishonesty, or immoral acts constitute defamation per se and damages are presumed. See Ravnikar v. Bogojavlensky, 438 Mass. 627 (2003); Scholz v. Delp, 473 Mass. 242 (2015).

22. Plaintiff has suffered reputational injury, emotional distress, and loss of income and professional opportunity as a result of Defendants' false and defamatory statements.

## COUNT II – FALSE LIGHT INVASION OF PRIVACY

23. Plaintiff realleges and incorporates by reference all preceding paragraphs.

24. Defendants publicly portrayed Plaintiff in a false light by creating and disseminating misleading content that implied he was a violent, dishonest, and criminal individual.

25. The portrayal would be highly offensive to a reasonable person and was publicized to a wide audience, including tens of thousands of online viewers, and was made with knowledge or reckless disregard of its falsity.

26. As a result, Plaintiff suffered emotional distress, reputational harm, and loss of public trust.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

27. Plaintiff realleges and incorporates by reference all preceding paragraphs.

28. Defendants' conduct was extreme and outrageous, intentionally designed to cause Plaintiff severe emotional distress.

29. Defendants falsely portrayed Plaintiff as a criminal, a fraud, and a threat to others, and encouraged others to ridicule and reject him publicly.

30. As a result, Plaintiff has experienced serious mental anguish, anxiety, humiliation, and reputational harm. Defendants' coordinated conduct involved multiple actors across large platforms with viewerships exceeding 25,000, encouraged audience engagement and ridicule, and was monetized by the Defendants through donation solicitations concurrent with the defamatory broadcasts.

## COUNT IV – CIVIL CONSPIRACY

31. Plaintiff realleges and incorporates by reference all preceding paragraphs.

32. Defendants acted in concert through shared broadcasts, joint appearances, and mutually supportive content to defame and discredit Plaintiff.

33. Their coordinated conduct was aimed at achieving unlawful objectives through wrongful means, including joint livestream broadcasts, mutual amplification of false statements, refusal to issue retractions, and monetization of defamatory content for financial gain.

34. As a direct result of this conspiracy, Plaintiff suffered ongoing harm.

## COUNT V – REPUBLICATION OF DEFAMATION

35. Plaintiff realleges and incorporates by reference all preceding paragraphs.

36. Defendants Abrams and Hiller republished prior defamatory statements on multiple occasions, including on June 18, 2025, after knowing they were false, and in the course of soliciting donations and promoting viewership.

37. Each republication constitutes a new defamatory act under Massachusetts law.

38. Plaintiff continues to suffer from the extended life and reach of these harmful statements.

## COUNT VI – COSTS AND FEES

39. Plaintiff realleges and incorporates by reference all preceding paragraphs.

40. Plaintiff has incurred substantial out-of-pocket costs in bringing this litigation and preparing the record, including certified paralegal assistance and documentary collection.

41. Plaintiff requests reimbursement of those reasonable costs, consistent with court authority for awarding litigation-related expenses to pro se plaintiffs utilizing external legal assistance.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Award compensatory damages in the amount of $1,000,000;

2. Award punitive damages for willful and malicious conduct;

3. Award Plaintiff reasonable costs incurred in prosecuting this action, including out-of-pocket expenses for certified paralegal assistance in California retained to support Plaintiff's litigation efforts;

4. Grant such other and further relief as the Court deems just and proper.

EXHIBIT INDEX

Exhibit No. Description

Exhibit 1 Declaration of New Hampshire Host

Exhibit 2 Declaration of California Technologist

Exhibit 3 YouTube Analytics Screenshot (June 18–19, 2025)

Exhibit 4 Hotel Receipts

Exhibit 5 Cash App Transfers to Abrams (2022)

Exhibit 6 Video File: Josh Abrams Livestream (June 18, 2025)

Exhibit 7 Transcript of June 18, 2025 Video

Respectfully submitted,

June 20, 2025

Jose Maria DeCastro
Plaintiff, Pro Se
1258 Franklin
Santa Monica, California 90404
Chille@situationcreator.com
cell. 310.963.2445