UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Jose DeCastro,
Plaintiff,

v.

Dale Hiller, Josh Abrams, and Kate Peter,
Defendants.

Case No. 1:25-cv-11610

**RENEWED MOTION FOR EXTENSION OF TIME TO COMPLETE SERVICE OF PROCESS
AND FOR AUTHORIZATION OF ALTERNATIVE SERVICE**

## Introduction and Relief Requested

Plaintiff, Jose DeCastro, respectfully moves this Court for a second sixty (60) day extension of time to complete service of process on all defendants pursuant to Federal Rule of Civil Procedure 4(m), and for authorization to effect service through alternative means pursuant to Federal Rule of Civil Procedure 4(e)(1) and Massachusetts Rule of Civil Procedure 4(d)(2). This motion is made in good faith and demonstrates Plaintiff's diligent efforts to locate and serve defendants who, as internet personalities, have intentionally concealed their physical addresses and are actively evading service despite having actual knowledge of this lawsuit.

## Statement of Facts

This civil tort action was filed on June 3, 2025 against Dale Hiller, Josh Abrams, and Kate Peter. The case involves defamation claims arising from statements made by defendants, who are content creators and internet personalities in the YouTube community. None of the defendants have appeared in this action, and no counsel has entered an appearance on behalf of any defendant.

The Court previously granted Plaintiff's first motion for extension of time, extending the service deadline to early November 2025. Since that time, Plaintiff has made diligent and good faith efforts to locate current physical addresses for service on all three defendants. These efforts include:

> 1. Multiple comprehensive online searches using public records databases, social media platforms, and search engines;
> 2. Review of defendants' publicly available social media profiles and YouTube channels for location information;
> 3. Searches of business registration databases and domain registration records; and
> 4. Review of all available public information associated with defendants' online personas.

Despite these exhaustive efforts, Plaintiff has been unable to locate current, reliable physical addresses for any of the three defendants. As internet personalities who conduct their business and public activities exclusively or primarily online, the defendants have not

publicly disclosed residential or business addresses suitable for personal service. Defendants intentionally maintain anonymity regarding their physical locations as a common practice among online content creators who wish to avoid unwanted contact from viewers and the public.

Plaintiff has intentionally refrained from soliciting address information from other members of the YouTube community, as doing so would be inappropriate and potentially harassing given the nature of the dispute. Such inquiries could also alert defendants to service attempts and encourage further evasion.

**Defendants Have Actual Knowledge of This Lawsuit But Are Evading Service**

The evidence establishes that defendants have actual knowledge of this lawsuit and are intentionally evading service. Defendant Josh Abrams publicly acknowledged this lawsuit in a YouTube video where he announced he was conducting a fundraiser to hire attorney Joshua Garrick to represent both himself and defendant Dale Hiller in this matter. Despite this public acknowledgment and stated intention to retain counsel, no attorney has entered an appearance on behalf of any defendant, and defendants have not provided addresses for service.

The events of August 30, 2025 provide further compelling evidence of defendants' actual knowledge and intentional evasion, while simultaneously demonstrating the effectiveness of electronic service methods.

**The August 30, 2025 Livestream Evidence**

On August 30, 2025, Plaintiff conducted a YouTube livestream titled "WHAT TO DO WHEN YOU ARE PULLED OVER - WE DON'T STOP!" on his Delete Lawz channel. During this livestream, at timestamp 2:48:05, Plaintiff discovered that defendant Dale Hiller (who operates online as "Lackluster") was present in the audience after someone gifted Hiller a free channel membership. A screenshot of the video showing the relevant timestamps with the YouTube transcript panel is attached as Exhibit A. The complete video remains publicly available on YouTube.

The circumstances surrounding Hiller's presence demonstrate both the irony of his conduct and the appropriateness of alternative service. In the video that forms the basis of this defamation action, Hiller stated that Plaintiff's "MO is to sit in the crowd and just lurk and not add anything to the comments if he's not the main topic of discussion." Yet on August 30, 2025, Hiller did precisely what he falsely accused Plaintiff of doing: he sat silently in Plaintiff's livestream audience, contributing nothing to the discussion, lurking without comment. Only the automated notification of his gifted membership revealed his presence, indicating he was intentionally monitoring Plaintiff's content anonymously.

Upon discovering Hiller in his audience at timestamp 2:48:05, Plaintiff immediately attempted informal resolution. At timestamp 2:48:12, Plaintiff directly addressed Hiller during the livestream: "Lackluster, check your email, man. Check your email, dude. Check your email, dude. Lackluster, let's close the gap, man. Let's close the gap. Let's let's let's end this. I sent you an email, dude." (Exhibit A).

The emails Plaintiff referenced were sent from Plaintiff to Hiller at deletelawz@gmail.com at 3:04 PM (Exhibit B) and 3:11 PM (Exhibit C) that same day. In these emails, Plaintiff offered

to dismiss Hiller from the lawsuit in exchange for retractions of the allegedly defamatory statements. Specifically, Plaintiff asked Hiller to retract false claims that Plaintiff: (1) blackmailed Josh Abrams; (2) was coming to Hiller's home; (3) operates a Ponzi scheme; (4) is a danger to society; (5) extorted people; and (6) has victims of violence working through the court system. Plaintiff wrote: "Retract it man -- I'll drop this. Sorry it went so bad -- we should end it. My Lawyer told me not to write this. I'd like to drop you from the suit." (Exhibit B).

In his follow-up email at 3:11 PM, Plaintiff emphasized his desire to resolve the matter: "Otherwise we'll be in this for years and I liked you -- you turned on me -- I don't wanna sue you man. You forced me... I'd like to release you from this Lawsuit. 100. This is not a ploy or a joke or me being some kinda bad -- I wanna move on. Don't you?" (Exhibit C).

Despite being present in Plaintiff's livestream when these settlement overtures were made, and despite Plaintiff's direct public appeal to "check your email," Hiller did not respond to either email. Hiller continued to monitor the livestream silently—lurking, in his own terminology—but refused to engage in settlement discussions or provide an address for service. Plaintiff also contacted Hiller's attorney (referenced in Abrams' fundraising video), who similarly did not respond to inquiries about service or settlement.

These facts demonstrate several critical points relevant to this motion:

>1. Defendants have actual knowledge of this lawsuit, as evidenced by Abrams' public fundraising video and Hiller's presence in Plaintiff's livestream;
>2. Hiller actively monitors Plaintiff's online content and electronic communications in real time;
>3. Service by email and social media direct message would unquestionably reach defendants and provide them with actual notice;
>4. Plaintiff made good faith efforts to resolve this matter informally before seeking alternative service authorization;
>5. Defendants' refusal to respond despite having actual knowledge demonstrates intentional evasion of service; and
>6. Defendants are deliberately concealing their physical addresses while maintaining active online presences.

## Legal Argument

### A. Good Cause Exists for Additional Extension Under Rule 4(m)

Federal Rule of Civil Procedure 4(m) requires the court to extend time for service if the plaintiff shows good cause for failure to serve within the prescribed time. Good cause exists where the plaintiff has made diligent efforts to effect service but has been thwarted by circumstances beyond the plaintiff's control. See *Lepore-Hagan v. Romero*, 653 F.3d 1, 4 (1st Cir. 2011) (good cause exists when plaintiff acts diligently but faces practical obstacles to service).

Here, Plaintiff has demonstrated diligent efforts to locate defendants through all reasonable means available. The inability to locate defendants is not due to lack of effort, but rather to defendants' status as internet personalities who intentionally conceal their physical locations while maintaining exclusive or primary online presences. Defendants have hidden their

addresses from public view precisely because they are internet personalities who do not wish their physical locations to be known.

Courts have consistently found good cause where defendants are difficult to locate, particularly in cases involving online conduct. Additionally, the fact that Plaintiff attempted informal resolution—as demonstrated by the August 30, 2025 settlement emails sent during Hiller's real-time monitoring of Plaintiff's livestream—demonstrates good faith and diligence rather than dilatory tactics.

Critically, the delay is attributable to defendants' intentional evasion. Despite having actual knowledge of this lawsuit (as evidenced by Abrams' fundraising video and Hiller's livestream presence), despite announcing plans to retain counsel, and despite receiving direct settlement overtures, defendants have refused to provide addresses for service, refused to have counsel enter an appearance, and refused to engage in any manner that would facilitate proper service. This is not a case of plaintiff's neglect, but rather defendants' deliberate obstruction.

No prejudice will result to defendants from this extension. Defendants already have actual knowledge of the litigation and have had ample opportunity to obtain counsel and respond. The case remains at an early stage. The extension will merely allow Plaintiff additional time to accomplish through court-authorized alternative means what defendants have made impossible through their evasion of traditional service methods.

## B. Alternative Service Is Warranted Under Federal and Massachusetts Rules

Federal Rule of Civil Procedure 4(e)(1) authorizes service "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located." Massachusetts Rule of Civil Procedure 4(d)(2) provides that if service cannot be made by traditional means, the court may order "such notice as is reasonable and proper" to give the defendant actual notice of the proceedings.

Alternative service by email and social media is particularly appropriate where, as here, defendants: (1) cannot be located through diligent efforts; (2) operate primarily or exclusively online as internet personalities; (3) maintain active email addresses and social media accounts; (4) have demonstrated receipt of electronic communications from Plaintiff; (5) have actual knowledge of the lawsuit; and (6) are intentionally evading service.

Courts have approved alternative service by email and social media in similar circumstances. See *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002) (approving email service where defendants operated online and traditional service impracticable); *Hollow v. Hollow*, 747 N.Y.S.2d 704 (Sup. Ct. 2002) (authorizing service via email where defendant's location unknown but email address available).

Here, the record conclusively establishes that defendants, particularly Hiller, actively monitor Plaintiff's electronic communications and online content in real time. As detailed above, on August 30, 2025, Hiller was present in Plaintiff's livestream audience, monitoring the content as it was broadcast. When Plaintiff publicly announced during the livestream that he had sent emails to Hiller and urged Hiller to "check your email" and "close the gap," Hiller was present and receiving this message in real time. The fact that Hiller remained in the audience after this direct appeal but chose not to respond demonstrates not lack of notice, but willful refusal to engage.



This is not a case where Plaintiff seeks to serve defendants who may not regularly check email or monitor social media. Rather, Hiller demonstrated on August 30, 2025 that he actively seeks out and monitors Plaintiff's content, even when doing so anonymously. The livestream evidence shows that Hiller's presence was only discovered because someone gifted him a channel membership—suggesting he was intentionally lurking without visible participation, the very conduct he falsely attributed to Plaintiff in the defamatory video underlying this action.

All defendants maintain active YouTube channels where they regularly publish content and communicate with audiences. Plaintiff has confirmed email addresses for defendants through prior communications, including Hiller's deletelawz@gmail.com address used in the August 30, 2025 emails. Abrams publicly identified himself and announced plans to retain counsel in his fundraising video. Alternative service by email and direct message through defendants' YouTube channels and associated social media accounts would provide actual notice superior to publication or posting.

The August 30, 2025 events eliminate any due process concerns about notice. When a defendant actively monitors the plaintiff's real-time communications, has actual knowledge of pending legal matters, publicly acknowledges the lawsuit, announces plans to defend against it, but then chooses to evade service rather than provide an address, service through electronic channels satisfies constitutional requirements. The Supreme Court has held that due process requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Here, service by email and social media direct message would unquestionably apprise defendants of this action, as demonstrated by Hiller's real-time monitoring on August 30, 2025 and Abrams' public acknowledgment of the lawsuit.

## Conclusion and Prayer for Relief

For the foregoing reasons, Plaintiff respectfully requests that this Court:

>1. Find good cause under Rule 4(m) for Plaintiff's inability to complete traditional service on defendants;

>2. Grant a sixty (60) day extension of time to complete service of process on all defendants;

>3. Authorize alternative service on defendants Dale Hiller, Josh Abrams, and Kate Peter by:
>>a. Email to their known email addresses; and
>>b. Direct message through their YouTube channels and associated social media accounts;

>4. Order that service by these alternative means shall constitute valid and effective service under Federal Rule of Civil Procedure 4 and Massachusetts Rule of Civil Procedure 4; and

>5. Grant such other relief as the Court deems just and proper.

Dated: October 30, 2025

Respectfully submitted,

/s/ Jose DeCastro
Jose DeCastro
1258 Franklin
Santa Monica, CA 90404
chille@situationcreator.com
Plaintiff, Pro Se



# CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2025, I am serving a true and correct copy of the foregoing Renewed Motion for Extension of Time to Complete Service of Process and for Authorization of Alternative Service, together with all supporting exhibits, by mailing the documents to the Court via United States Postal Service, first class mail.

Plaintiff is currently unable to access his PACER/CM-ECF account and is therefore serving this motion by mail pursuant to Federal Rule of Civil Procedure 5(b)(2)(C). No counsel has entered an appearance on behalf of any defendant in this matter.

/s/ Jose DeCastro
Jose DeCastro