UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| JOSE MARIA DeCASTRO,<br>    Plaintiff,<br><br>v.<br><br>JOSHUA ABRAMS,<br>DALE HILLER,<br>KATHERINE PETER,<br>JOHN DOES 1 THROUGH 5,<br>    Defendants. | C.A. No. 1:25-cv-11610-ADB |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JOSHUA ABRAMS AND DALE HILLER'S MOTION TO DISMISS AND REQUEST FOR SANCTIONS**

**I.     PROCEDURAL HISTORY**

YouTube personality, content creator and serial *pro se* litigator Jose Maria DeCastro ("DeCastro"),[1] has filed yet another lawsuit arising out of critical statements purportedly made by defendants Joshua Abrams ("Abrams"), Dale Hiller ("Hiller"), Kate Peter ("Peter") and five yet-to-be-named John Doe defendants (collectively with Abrams, Hiller and Peter, the

---

[1] A brief non-exhaustive search uncovered the following body of cases, which appears to follow a pattern of unsuccessful litigation against other YouTube personalities, municipalities, municipal employees, and judges. *See, e.g., DeCastro v. Abrams*, D. Mass., No. 1:22-cv-11421-ADB (dismissed); *DeCastro v. McNight*, D. Nev., No. 2:24-cv-00435-DJA (transferred to S.D. Oh.); *DeCastro v. McNight*, S.D. Oh., No. 1:25-cv-00613-MRB-SKB (deemed related to 1:22-cv-00204); *DeCastro v. Wagner*, S.D. Oh., No. 1:22-cv-00204-MRB-SKB (dismissed); *DeCastro v. Wagner*, 6th Circuit, No. 23-3808 (rejecting *pro se* appeal); *DeCastro v. City of Duncan, Oklahoma*, C.D. Cal., No. 2:25-cv-11981-SB-ADS (transferred to W.D. Ok.); DeCastro v. City of Duncan, Oklahoma, W.D. Ok., No. 5:26-cv-00027-G (transferred from C.D. Cal.); *DeCastro v. Google, LLC d/b/a YouTube*, N.D. Cal., No. 5:25-mc-80208-NC; *DeCastro v. O'Dea*, N.D. Cal., No. 5:25-cv-06567-NC (in default status); *DeCastro v. Las Vegas Metropolitan Police Department*, D. Nev., No. 2:23-cv-00580-APG-EJY (partially dismissed); *DeCastro v. Las Vegas Metropolitan Police Department*, 9th Cir., No. 23-16089 (rejecting *pro se* appeal); *DeCastro v. Peter*, Super. Ct. Cal. (L.A. County), No. 23SMCV00538 (dismissed with DeCastro being sanctioned); *DeCastro v. Zimmerman*, D. Nev., No. 2:25-cv-00899-APG-BNW.

"Defendants") on a June 10, 2022 YouTube livestream video.  If this sounds familiar, it is because DeCastro previously filed the same lawsuit against Abrams and Peter on September 2, 2022.  *See DeCastro v. Abrams, et al.*, C.A. No. 1:22-cv-11421-ADB (the "Prior Lawsuit").  In the Prior Lawsuit – like this case – DeCastro filed defamation claims against Abrams and Peter arising out of these YouTube livestreams, where (as alleged) the Defendants stated that DeCastro: (1) engages in blackmail and extortion; (2) assaults women; and (3) steals from investors.  *Compare* FIRST AMENDED COMPLAINT ("FAC.") (ECF No. 10), at ¶ 8; *with* COMPLAINT FOR DEFAMATION in Prior Lawsuit ("Prior Lawsuit Complaint") (ECF No. 1), at ¶ 11.  Of course, the purpose of the Prior Lawsuit – like this case – was not to win, but to vex.  *See* EMERGENCY MOTION TO DISMISS in Prior Lawsuit (ECF No. 27).[2]

Not liking the trajectory of the Prior Lawsuit, DeCastro tried valiantly to dismiss his defamation claims.  *See* Prior Lawsuit ECF Nos. 55, 56, 58, 59, 60, 66, 73, 80, 82, and 83 (each seeking to dismiss the defamation claims).  In each instance, citing to FED. R. CIV. P. 41, and recognizing that both Abrams and Peter had answered the complaint and filed counterclaims, the Court could not dismiss the defamation claims without the consent of all parties.  *See, e.g.*, Prior Lawsuit ECF No. 57, 67, 74, 81, 85; *see also* Prior Lawsuit ECF No. 64 (Abrams and Peter declining to consent to dismissal).  Eventually, without consent, DeCastro effectively dismissed the defamation claims by amending his complaint to bring claims of copyright infringement.  *See*

---

[2] This pleading documented the statements made by DeCastro that illustrated his vexatious motives: "I don't care if I win because I care that you have to hire a lawyer . . . I care that I extend the process for as long as I can to drain you . . . Eventually I'm gonna get them, because the thing is that, I'll, I will break them financially.  They will have to hire a lawyer.  I will file motion after motion after and I'll just keep going legally after them until I break them, until they can't afford to hire a lawyer anymore so they run out of money.  That's what I'm gonna do, I'm gonna break them . . . Heed my warning: I will not stop until I break you down to zero.  We Don't Stop."

First Amended Complaint in Prior Lawsuit (ECF No. 62). DeCastro's amended lawsuit was later dismissed in its entirety, with prejudice, for failing to state a claim for which relief could be granted. *See* Memorandum and Order in Prior Lawsuit (ECF No. 133).

Before the claims in the Prior Lawsuit were amended, Abrams and Peter filed defamation counterclaims of their own. *See* Answers and Counterclaims in Prior Lawsuit (ECF Nos. 53 and 54). The Court dismissed these defamation counterclaims for lack of subject matter jurisdiction because the counterclaims failed to articulate specific facts necessary to show that the amount-in-controversy exceeded $75,000.00. *See* Memorandum and Order in Prior Lawsuit (ECF No. 134). As a result, all claims and counterclaims were dismissed on July 11, 2023. *See* Order of Dismissal in Prior Lawsuit (ECF No. 135).

A few years later, on June 3, 2025, DeCastro has reincarnated the very same defamation causes of action in this new lawsuit – the very same claims he desperately sought to dismiss on ten occasions in the Prior Lawsuit. The lawsuit was initially assigned to another session of this Court but was – over DeCastro's objection – transferred to this session pursuant to Local Rule 40.1 as being related to the Prior Lawsuit. *See* Electronic Order (ECF No. 28) (Sorokin, J.). By way of this motion, Abrams and Hiller respectfully move to dismiss DeCastro's First Amended Complaint for failing to state a claim for which relief can be granted due to this lawsuit being an impermissible claim split and, substantively, for failing to timely file the claim within the applicable statute of limitations (Fed. R. Civ. P. 12(b)(6)), for lack of subject matter jurisdiction due to a failure to meet this Court's $75,000.00 amount-in-controversy requirement (Fed. R. Civ. P. 12(b)(1)), and – with respect to Hiller, only – for lack of personal jurisdiction (Fed. R. Civ. P. 12(b)(2)).

## II.    FACTUAL BACKGROUND

This lawsuit was filed on June 3, 2025.  *See* COMPLAINT FOR DEFAMATION AND FALSE LIGHT ("C.") (ECF No. 1).  DeCastro alleges that he is a citizen of the State of California.  *See* FAC., at ¶ 3.  He alleges that Abrams and Peter reside in Massachusetts and – although uncertain – that Hiller resides in Washington, D.C.  *See id.*, at ¶¶ 4-6.  DeCastro's guess as to Hiller's residence was incorrect.  At all relevant times Hiller was a citizen of the State of West Virginia with no ties whatsoever to the Commonwealth of Massachusetts.  *See* AFFIDAVIT OF DALE HILLER ("Hiller Aff."), attached herewith as "Exhibit A."  DeCastro argues that this Court has subject matter jurisdiction over the dispute by virtue of 28 U.S.C., § 1332(a) (diversity of jurisdiction).  Defendants concede that there is complete diversity among them, but challenge the amount-in-controversy.  With respect to damages, DeCastro plead as follows:

> As a direct result of Defendants' defamatory statements, Plaintiff has suffered: a. Reputational harm and loss of professional credibility; b. Decreased viewership and subscriber engagement on digital platforms; c. Loss of potential business opportunities and collaborations; d. Emotional distress, anxiety and Fear of Future losses; e. Costs associated with attempting to mitigate the reputational damage, including platform moderation and counter-messaging efforts; f. A verified drop of 402 subscribers occurred on Plaintiff's YouTube channel between June 17 and June 20, 2025 (see Exhibit 3, YouTube analytics screenshots), following the June 18, 2025 broadcast by Defendant Abrams in which he falsely accused Plaintiff of fraudulently purchasing subscribers.  This visible public loss in support directly correlates with reputational harm, diminished credibility, and economic damage tied to reduced audience engagement and monetization.

*See* FAC., at ¶ 17. Although DeCastro references an "Exhibit C," in this paragraph pertaining to damages, there was no "Exhibit C" filed with the amended complaint.  The only exhibit to the amended complaint was a declaration DeCastro submitted at "Exhibit 1," that addressed transcripts of the YouTube livestreams.  Those transcripts were not filed either.

Substantively, DeCastro alleged the following facts. DeCastro alleged that Abrams published three YouTube livestreams that were critical of him. These occurred on June 1, 2022, June 10, 2022 and June 18, 2025. *See* C., at ¶ 7; FAC., at 8. Reference to the June 1, 2022 livestream was mentioned in the original complaint but scrubbed from the First Amended Complaint (presumably to address complications of a three year statute of limitations).[3] *See id*. On these YouTube livestreams, DeCastro alleges that Abrams falsely referred to him as a "vexatious litigant," falsely stated that he would report Abrams to his parole officer to coerce removal of a video, falsely stated that DeCastro was engaged in blackmail and extortion, purchased YouTube subscribers, committed assault and battery on a woman in public, was involved in multiple undisclosed court cases, uses "sock accounts" to impersonate others, falsely stated that he is a "cancer to the First Amendment community," falsely stated that he is "a legend in his own fucking mind," and falsely stated that he was "borrowing from Peter to pay Paul." *See* FAC., at ¶ 8. With respect to Hiller, DeCastro alleged that he was on the same June 2022 livestream, and that he falsely endorsed or affirmed Abrams' accusations, stated that DeCastro choked another creator's wife, stated that DeCastro attempted to show up at his residence uninvited, stated that DeCastro is dangerous and capable of harming others, and stated that "there are victims" in ongoing court cases. *Id.*, at ¶ 9. DeCastro claims that these statements by the Defendants were false, were made maliciously and with knowledge of their falsity or reckless disregard for the truth, and with the intent to harm DeCastro. *Id.*, at ¶¶ 11-12.

---

[3] Although DeCastro may have filed this case in Massachusetts to take advantage of its three year statute of limitation for defamation claims, it is actually California law – and its one year statute of limitations – that applies to this dispute. *See* SECTION III(B), *infra*; citing CAL. CIV. PROC. CODE § 340(c).

As a result of these allegations, DeCastro filed a six count complaint, that included the following counts: (1) defamation (per se and per quod); (2) false light invasion of privacy; (3) intentional infliction of emotional distress; (4) civil conspiracy; (5) republication of defamation; and (6) costs and fees.  Defendants now move to dismiss each of these six causes of action.

## III.   ARGUMENT

### A.   DECASTRO'S CLAIMS MUST BE DISMISSED WITH PREJUDICE AS IT IS AN IMPERMISSIBLE CLAIM SPLIT

DeCastro's claims are subject to dismissal with prejudice pursuant to the claim splitting doctrine.  "[A]s a general proposition, parties are not permitted to engage in claim-splitting: that is, parties are generally not permitted to bring new actions based on claims that could have been asserted in the earlier action but were not." *Salvati v. Fireman's Fund Ins. Co.*, 368 F. Supp. 3d 85, 91 (D. Mass. 2019).  The doctrine essentially prevents a party from bringing a subsequent lawsuit where it "had every opportunity to fully litigate its various claims . . . in an earlier suit and made the strategic choice not to do so." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010).

Early cases out of the First Circuit analyzed the claim split doctrine as an application of the *res judicata* doctrine.  Under this standard, a claim would be barred if "(1) [an] earlier suit resulted in a final judgment on the merits, (2) the causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related." *Id*.  Over time, this standard was relaxed and instead has morphed into one where courts view the doctrine as one of "docket management." *See Conservation L. Found., Inc. v. Longwood Venues & Destinations, Inc.*, 415 F. Supp. 3d 240, 242 (D. Mass. 2019); citing 18 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 4406 (3d ed. 1998).  As such, courts are given broad discretion in deciding how to respond to

claim splits. *Id.*; citing *Elliott-Lewis v. Abbott Labs.*, 378 F. Supp. 3d 67, 70 (D. Mass. 2019). To be certain: a plaintiff "should not file duplicative lawsuits in the same court." *Id.*; citing *ConnectU LLC v. Zuckerberg*, 522 F.3d 59, n.5 (1st Cir. 2008).

In exercising its broad discretion, this Court need go no further than recognizing that these were the exact same claims filed by DeCastro in its original complaint filed in the now dismissed Prior Lawsuit. That satisfies all three elements of the older *res judicata* standard: (1) judgment on the merits (judgment entered after Defendants successfully moved to dismiss pursuant to FED. R. CIV. P. 12(b)(6)); (2) identical or related causes of action (both alleged defamation); and (3) identical or closely related parties (Abrams, Peter, and DeCastro were parties in both suits). Earlier in this case, Judge Sorokin made express findings that both lawsuits were related. *See* ELECTRONIC ORDER (ECF No. 28). Under Local Rule 40.1, this relatedness requirement goes to both parties and claims. *Id.*; citing LOCAL RULE 40.1(g)(1). Thus, under the older *res judicata* standard, this case was subject to dismissal as an improper claim split.

This case is also subject to dismissal under the current "docket management" standard. DeCastro has filed the same exact case that he dismissed years ago. He had every opportunity to pursue these defamation claims but chose not to for strategic purposes. In the Prior Lawsuit, Abrams recognized that when DeCastro attempted to dismiss his defamation claims, he did so for strategic purposes because he was dissatisfied with this Court (having had many of his numerous motions rejected and even accusing the Court of having *ex parte* communications and/or a bias against him).[4] In fact, Abrams and Peter <u>opposed</u> the first ten times DeCastro sought to dismiss the defamation claims. *See* Prior Lawsuit ECF Nos. 55, 56, 58, 59, 60, 66, 73,

---

[4] *See* PLAINTIFF'S MOTION FOR DISCLOSURE in Prior Lawsuit (ECF No. 116).

7

80, 82, and 83. Abrams predicted that DeCastro would re-file his defamation claims at a later time, likely in a different court to evade this Court's adjudication and in furtherance of his stated motives to vex and cause Defendants to capitulate into financial acquiescence. *See* ABRAMS' MOTION TO DISMISS in Prior Lawsuit (ECF No. 96), at * 10. After repeated unsuccessful attempts to dismiss his own defamation claims, DeCastro was eventually able to effectively do so when he filed an amended complaint without referencing any defamation. Still, Abrams gave DeCastro the opportunity to re-plead the defamation cause of action in the Prior Lawsuit so as to avoid the very claim splitting issues that now face the Court. *Id.*, at * 10-11. DeCastro opted not to act. He failed to pursue the defamation claims in the Prior Lawsuit and opted instead to try to assert them in this new lawsuit, before a new judge (to which he opposed reassignment) years later, in a manner that serves no purpose other than to needlessly add to the legal costs incurred by the Defendants. In sum, DeCastro "had every opportunity to fully litigate" the defamation claims in the Prior Lawsuit, but "made the strategic choice not to do so." *Airframe*, 601 F.3d, at 14. This Court should, therefore, invoke its vast discretion to dismiss this lawsuit, with prejudice, as an impermissible claim split.

      **B.**      <u>**DECASTRO'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS**</u>

The Court should also dismiss all claims with prejudice as they are all barred by the applicable statute of limitations. Under Massachusetts choice of law rules, this Court must apply California substantive law. All claims in this case arise out of allegedly defamatory statements that were published on YouTube livestreams – each of which were published throughout the world including the State of California, where DeCastro was domiciled. "When a defamatory statement is published in multiple states, the Restatement applies the law of the state with the 'most significant relationship to the occurrence and the parties.'" *See McKee v. Cosby*, 874 F.3d

54, 59-60 (1st Cir. 2017); citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 150(1) (1971). This means the Court must apply the state where the defamed person was domiciled at the time if the matter was published in that state. *Id*. That state is California.

Under California law, defamation claims must be brought within one year. *See* CAL. CIV. PROC. CODE § 340(c). A claim for defamation accrues upon publication. *See Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 850 (N.D. Cal. 2020); citing *Shively v. Bozanich*, 80 P.3d 676 (Cal. 2003). Accordingly, all claims predicated on defamation are time barred. This lawsuit was filed on June 3, 2025. Although the initial complaint stated that the offending livestream aired on June 1, 2022, that appears to have changed to June 10, 2025 in the amended complaint. However, even using the later June 10, 2022 date, the lawsuit is still time-barred because DeCastro would have had to file it by June 10, 2023. Instead, he waited until June 3, 2025 to file. This was far too late.

As a means to get around this hard and fast deadline, DeCastro alluded to a second livestream in the amended complaint that took place on June 18, 2025. No specific allegations of defamatory statements are attributable to that livestream, only vague conclusions that it "reignted public ridicule." *See* FAC., at 8. DeCastro admitted in the amended complaint, however, that this livestream was essentially a fundraiser seeking money to fund Abrams' legal defense after Abrams was sued for the second time. *Id*. ("[t]his more recent publication . . . solicited donations based on these defamatory claims"). As part of this fundraising effort, Abrams purportedly aired some of the original video from June of 2022. *See id*. Under California law, however, this does not save DeCastro's claims because under the single-publication rule (codified in California law), the defamation claims all accrued at the time of the original publication, regardless of how many other times the materials were distributed. *See*

*Shively*, 80 P.3d, at 685; citing *Belli v. Roberts Bros. Furs*, 240 Cal. App. 2d 284, 289 (1966) (publication generally is said to occur on the "first general distribution of the publication to the public"); *Bradford v. American Media Operations, Inc.*, 882 F.Supp. 1508, 1514 (E.D. Penn.). Thus, the belated inclusion of a new livestream does not save DeCastro's claims against Abrams. It is important to note that DeCastro does not allege that Defendant Hiller was involved in the 2025 video. *See* FAC., at ¶ 8. Thus, this analysis relating to the 2025 livestream is irrelevant to Hiller. Hiller's only potential liability arises out of the June 2022 livestream.

All other causes of action are similarly time-barred. Since all causes of action arise out of the alleged defamation, the Court would apply the same one year statute of limitations to all counts. *See Kenworthy v. Brown*, 248 Cal. App. 2d 298, 301 (Cal. App. 1967); *Agnew v. Parks*, 343 P.2d 118, 123 (Cal. 1959) (the applicable statute of limitations is that for the underlying tort). Even if the Court were to construe the intentional infliction of emotional distress claim as a stand alone claim, that carries a two year statute of limitations. *Soliman v. CVS RX Servs., Inc.*, 570 F. App'x 710, 711 (9th Cir. 2014); citing Cal. Civ. Proc. Code § 335.1. Accordingly, this lawsuit, filed three years after the offending conduct, would still be time-barred even under this more liberal two year limitations period. Either way, DeCastro's claims are all time barred and must be dismissed with prejudice.

      **C.**    **THIS COURT LACKS SUBJECT MATTER JURISDICTION**

The Court should dismiss all claims due to a lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). DeCastro asserted original diversity jurisdiction as the basis for this Court's jurisdiction. *See* FAC., at ¶ 1. While the Defendants concede complete diversity of citizenship among the parties, they nonetheless challenge subject matter jurisdiction because DeCastro has failed to meet the $75,000.00 amount-in-controversy requirement.

10

Federal district courts have original diversity jurisdiction over all civil actions in which the parties are citizens of different states and the amount in controversy exceeds $75,000.00. *See* 28 U.S.C. § 1332; *Esquilin-Mendoza v. Don King Prods., Inc.*, 638 F.3d 1, 3 (1st Cir. 2011); *Garcia Perez v. Santaella*, 364 F.3d 348, 350 (1st Cir. 2004); *Acutus Fund, LLC v. Drone Guarder, Inc.*, 588 F. Supp. 3d 177, 183 (D. Mass. 2022). With respect to the amount in controversy, "[t]he sum claimed by the plaintiff controls if the claim is apparently made in good faith," and it "must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Andersen v. Vagaro, Inc.*, 57 F.4th 11, 14–15 (1st Cir. 2023); quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938). Normally, "'a plaintiff's general allegation that the dispute exceeds the jurisdictional minimum is sufficient to support jurisdiction,' [but] when challenged, the plaintiff 'has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount.'" *Andersen*, 57 F.4th at 15; quoting *Dep't of Recreation & Sports of P.R. v. World Boxing Ass'n*, 942 F.2d 84, 88 (1st Cir. 1991).

Here, DeCastro demands $1,000,000.00, plus punitive damages, costs and expenses (including expenses for certified paralegal assistance). Such a high demand appears to have been fabricated out of whole cloth and cannot be viewed as being made in good faith. Nevertheless, because jurisdiction is challenged, "the burden shift[s] back to [plaintiff] to present 'with "sufficient particularity" facts that in some way support the contention that there is more than $75,000 at stake.'" *Andersen*, 57 F.4th at 15; quoting *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 42 (1st Cir. 2012).

This Court has already told these parties that a complaint must plead, with sufficient particularity, facts that support the amount-in-controversy jurisdictional threshold and that a bald

11

claim of lost subscribers without more is insufficient to invoke this Court's jurisdiction. *See* MEMORANDUM AND ORDER in Prior Lawsuit (ECF No. 134), at * 6. In the Prior Lawsuit, the Court dismissed Abrams' counterclaims because "Abrams does not provide any specific calculation or estimate of monetary damages resulting from DeCastro's conduct. For example, he provides no information about how many individuals view and/or are members of his channel, how much revenue he gets from members and/or viewers, or how many members and/or viewers he lost because of DeCastro's statements." *Id*. DeCastro's failings are the same here. DeCastro claimed – via a missing exhibit of a "verified" screenshot – that he lost 402 subscribers in June of 2025 (i.e., more than three years after the original publication of the offending livestream). There are no allegations that he lost subscribers at any point in time before that. Even if he could make a causal connection and plead (in a non-conclusory manner) that he lost these subscribers because of the conduct of the Defendants, DeCastro still failed to state how much revenue he lost from these 402 subscribers. In reality, DeCastro cannot plead these facts in good faith because the loss of 402 subscribers equates to very little (if any) income. He currently has 684,000 subscribers.[5] Losing 402 subscribers is less than .06% of his following. If we are to assume that DeCastro lost .06% of his income, that would mean his income would have had to exceed $125,000,000.00 to invoke this Court's jurisdiction:

$$\$125,000,000.00 \text{ X } .0006 = \$75,000.00$$

Of course, this assumes that the subscribers he purports to have lost actually generated income for him. Just having subscribers does not equate to income – the subscribers must view DeCastro's content, purchase merchandise, or click on advertisements for DeCastro to earn an

---

[5] https://www.youtube.com/@deletelawz1984

income from YouTube.[6]  DeCastro has failed to explain how he was damaged, he failed to provide any information about the revenues he obtained from these 402 subscribers prior to the alleged misconduct of the Defendants, he failed to detail the revenues he lost from these 402 subscribers after the alleged misconduct of the Defendants, and he failed to discuss his income (past and present) to show how a loss of .06% of his subscriber base would meaningfully affect his income.  DeCastro failed to plead how a loss in viewership or subscriber engagement resulted in any damages.  He failed to discuss the costs associated with reputational harm and/or costs to mitigate reputational harm.  He failed to identify any lost business opportunities and/or collaborations (and he failed to explain how these lost opportunities have impacted his income).  DeCastro has failed to articulate any facts with sufficient particularity to satisfy his burden.  Indeed, this Court has already informed the parties what is needed to invoke this Court's jurisdiction.  DeCastro failed to follow this Court's instructions and given the lack of facts to support the amount-in-controversy requirement, the Court should dismiss the complaint for lack of subject matter jurisdiction.

### D. THIS COURT LACKS PERSONAL JURISDICTION OVER HILLER

The Court must also dismiss claims brought against defendant Hiller – a citizen of West Virginia – for a lack of personal jurisdiction.  *See* FED. R. CIV. P. 12(b)(2).  In a diversity case, a federal court may exercise personal jurisdiction over a non-resident defendant if the forum state's long-arm statute confers personal jurisdiction and the exercise of personal jurisdiction over the defendant satisfies the requirements of the Due Process Clause of the U.S. Constitution.  *See Astro-Med* v. *Nihon Kohden Am., Inc.,* 591 F.3d 1, 8 (1st Cir. 2009).  The plaintiff bears the burden of proving personal jurisdiction.  *See Daynard v. Ness, Motley, Loadholt, Richardson &*

---

[6] https://www.youtube.com/creators/how-things-work/video-monetization/

13

*Poole, P.A.*, 290 F.3d 42, 50-51 (1st Cir. 2002).  The Due Process Clause of the Fourteenth Amendment permits personal jurisdiction over a defendant in any State with which the defendant has certain minimum contacts such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).  This can be based on either "general jurisdiction" or "specific jurisdiction." *See Astro-Med,* 591 F.3d at 9.  General jurisdiction exists when a defendant's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum state." *Daimler AG* v. *Bauman,* 571 U.S. 117 (2014); quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011).  A court may alternatively exercise specific jurisdiction over a defendant if the plaintiff's particular claims "arise out of or relate to the defendant's contacts" with the forum state.  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351 (2021).  To exercise specific jurisdiction over a defendant, a court must find that (1) the defendant has minimum contacts with the forum state, i.e. that the defendant purposely directed its activities toward the state or purposefully availed itself of the privileges of conducting activities there; (2) the plaintiff's claims arise out of or result from these forum-related contacts; and (3) the exercise of personal jurisdiction is fair and reasonable.  *Vapotherm, Inc. v. Santiago*, 38 F.4th 252, 258 (1st Cir. 2022).

DeCastro is unable to meet his burden on any of these prongs.  This case was brought under the Court's diversity jurisdiction.  Although "uncertain," DeCastro pled that Hiller was a citizen of the District of Columbia.  In fact, Hiller is a citizen of West Virginia.  See Hiller Aff., at ¶ 1.  Regardless of whether he is a citizen of the District of Columbia or West Virginia, the key is he is not a citizen of Massachusetts.  DeCastro, on the other hand, is a citizen of California.  In the amended complaint, DeCastro's allegations relating to personal jurisdiction against Hiller are

slim. DeCastro merely argues that the *venue* in this case is appropriate because Hiller "purposefully directed defamatory content into Massachusetts and participated in a livestream coordinated with Massachusetts residents." *See* FAC., at 2. DeCastro goes on to conclude, based on these conclusory allegations, that Hiller's actions meet the "effects test" set forth in *Calder v. Jones*, 465 U.S. 783 (1984) by intentionally causing harm to DeCastro in the forum state (i.e., Massachusetts). DeCastro not only fails to plead any facts to satisfy either the Massachusetts long-arm statute or the "minimum contacts" due process standard, he also grossly misapplies the holding in *Calder*.

To begin, the Court should look at the Massachusetts long-arm statute. This permits a Massachusetts Court to exercise personal jurisdiction over a defendant under limited circumstances including, without limitation: "(a) transacting any business in this commonwealth; . . . (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth . . . ." *See* MASS. GEN. LAWS, ch. 223A, § 3. DeCastro failed to plead that Hiller acted in any manner that would invoke the long-arm statute. Instead, DeCastro alleges that Hiller "purposefully directed defamatory content into Massachusetts" and he "participated in a livestream coordinated with Massachusetts residents." *See* FAC., at ¶ 2. These allegations fall short of what is required under the long-arm statute. On the contrary, DeCastro is conceding that the alleged tortious conduct is being done outside of Massachusetts but is somehow being "directed" into the jurisdiction. *Id*. The long-arm statute requires more. It requires tortious conduct to be caused in Massachusetts; not that tortious conduct caused in another jurisdiction be

directed into Massachusetts. *See* MASS. GEN. LAWS, ch. 223A, § 3. This should end the inquiry, and the case should be dismissed as to Hiller for lack of personal jurisdiction.

DeCastro would have the Court skip this step of the analysis and go straight to the due process analysis. DeCastro does not allege general jurisdiction but instead seems to argue for specific jurisdiction via the seldom used "effects" test established in *Calder*. *Calder*, however, is factually inapposite. In *Calder*, two reporters for the National Enquirer from Florida wrote an allegedly libelous article about a California entertainer. *Calder*, 465 U.S., at 784-85. The article was primarily based on phone calls to California sources. *Id.* at 785. However, *Calder* did not turn on the presence of physical, mail, or telephone contacts between the defendants and the forum. *Id.* at 787, n. 6. Instead, the Supreme Court held that California could assert personal jurisdiction over the reporters "based on the 'effects' of [defendants'] Florida conduct in California." *Id.* at 789. Those "effects" were the harm caused to the plaintiff in the forum state which was the plaintiff's home state. If, for example, DeCastro was a Massachusetts resident and the effects of Hiller's conduct was to harm DeCastro in Massachusetts, DeCastro might have an argument. Those are not the facts here.

But even the *Calder* "effects" test holding is limited. That is because the *Calder* test only goes to a portion of the specific jurisdiction analysis. The First Circuit has held that *Calder* only addresses the purposeful availment aspect of jurisdiction, and not the long-arm or the "relatedness" analyses necessary to establish personal jurisdiction. *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 623 (1st Cir. 2001). Thus, even if DeCastro could somehow convince the Court that *Calder* is apposite, he must still meet his burden of establishing "relatedness." Under the "relatedness" prong, DeCastro cannot meet his burden of establishing that his claims arise out of or relate to Hiller's contacts with the Commonwealth of Massachusetts because

16

Hiller has no contacts with Massachusetts. *See* HILLER AFF. He never even set foot in Massachusetts. *Id*. Participating in a livestream coordinated with someone who just so happens to live in Massachusetts is simply too attenuated to force Hiller into Massachusetts to defend himself in this forum. *Id.*; citing *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 36 (1st Cir. 1998). In all respects, DeCastro cannot meet his burden of establishing personal jurisdiction over Hiller. He cannot show that the Massachusetts long-arm statute applies, he cannot show "relatedness," and he cannot show purposeful availment based on *Calder*. Accordingly, in the event the case is not dismissed with prejudice for the other reasons stated above, the case as to Hiller, at a minimum, must be dismissed for want of personal jurisdiction.

## IV. THE COURT SHOULD SANCTION DECASTRO FOR FILING MORE FRIVOLOUS LITIGATION

A district court may invoke its inherent power to award attorneys' fees and costs against parties who "act in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). Sanction awards for such conduct serve the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy. *Id.*, at 46; *Lipsig v. Nat'l Student Mktg. Corp.*, 663 F.2d 178, 181 (D.C.Cir.1980) ("advocacy simply for the sake of burdening an opponent with unnecessary expenditures of time and effort clearly warrants recompense for the extra outlays attributable thereto"). While courts must exercise discretion in wielding their inherent sanction powers in light of their potency and unconstrained nature,[7] they should not hesitate to use them when "neither the statute[s] nor the

---

[7] *See Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980).

Rules are up to the task," *Chambers*, 501 U.S. at 50; *Peer v. Lewis*, 606 F.3d 1306, 1314-15 (11th Cir. 2010) ("[w]hen rules alone do not provide courts with sufficient authority to protect their integrity and prevent abuses of the judicial process, the inherent power fills the gap").

There is perhaps no better case warranting sanctions than this one. DeCastro is a serial *pro se* litigator who seeks fame and notoriety via his YouTube channel through the filing of frivolous lawsuits. *See* NOTE 1, *supra* (listing frivolous cases filed by DeCastro). Nothing about this case is remotely actionable. There is no subject matter jurisdiction, and DeCastro was content to ignore this Court's instructions as to what was required to prove the amount-in-controversy has been exceeded. There is no personal jurisdiction over Hiller. The lawsuit is an unlawful claim split. And all of these problems plague DeCastro's amended complaint before we even get to the dubious merits of his specious claims. This is in line with DeCastro's stated purpose to vex, harass, and wear down his opponents until they are left with no choice but to financially capitulate. *See* NOTE 2, *supra* ("I extend the process for as long as I can to drain you . . . Eventually I'm gonna get them, because the thing is that, I'll, I will break them financially"). Abrams already faced one lawsuit filed by DeCastro. In the Prior Lawsuit, DeCastro initially pled the same defamation-based claims raised in this case but opted to dismiss it for strategic reasons. DeCastro attempted to do this 10 times. Each time Abrams opposed it because he knew DeCastro was dismissing it for illegitimate strategic reasons. This culminated in the motion to dismiss where Abrams gave DeCastro one more opportunity to re-plead the defamation based claims in the Prior Lawsuit, to avoid having to address a motion to dismiss on claim splitting grounds down the road. DeCastro opted not to re-plead the defamation claims in the Prior Lawsuit, choosing instead to re-file them here in this case so that they could be heard by a

different judge, opposing reassignment along the way. DeCastro's motives were so transparent that he was even called out by Judge Sorokin:

> One further consideration bears note. The related-case rule prevents judge shopping, i.e., it prevents a party from bringing a claim before one judge, dismissing it when unhappy, and then filing the claim(s) again in a new lawsuit before a different judge. This consideration counsels reassignment here.

*See* ELECTRONIC ORDER (ECF No. 28).

All of DeCastro's well-documented dilatory motives are troubling. It wastes not only the time and money of the Defendants, but it also burdens the Court who has to devote its own resources to address a case brought in bad faith. All of these factors weigh heavily in favor of the imposition of sanctions. Sanctions are necessary to penalize DeCastro for his bad faith and to ensure that he is not incentivized to bring more frivolous litigation in the future.

## V. CONCLUSION

For the reasons articulated herein, the Court should dismiss all claims, with prejudice, for failing to state a claim for which relief can be granted due to this lawsuit being an impermissible claim split and, substantively, for failing to timely file the claim within the applicable statute of limitations (FED. R. CIV. P. 12(b)(6)), for lack of subject matter jurisdiction due to a failure to meet this Court's $75,000.00 amount-in-controversy requirement (FED. R. CIV. P. 12(b)(1)), and – with respect to Hiller, only – for lack of personal jurisdiction (FED. R. CIV. P. 12(b)(2)). In addition, the Court should award Hiller and Abrams their reasonable attorneys' fees arising out of their defense of this frivolous lawsuit.

                                                Respectfully Submitted,

                                                */s/ Joshua N. Garick, Esq.*

                                                _____
                                                Joshua N. Garick (BBO #674603)
                                                LAW OFFICES OF JOSHUA N. GARICK, P.C.
                                                34 Salem Street, Suite 202
                                                Reading, Massachusetts 01867
                                                Phone: (617) 600-7520
                                                Fax: (617) 600-7430
                                                Joshua@GarickLaw.com

                                                *Counsel for Joshua Abrams and Dale Hiller*

Dated: January 20, 2026

## CERTIFICATE OF SERVICE

    I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

                                                */s/ Joshua N. Garick*_____
                                                Joshua N. Garick (BBO #674603)

Dated: January 20, 2026

## LOCAL RULE 7.1(A)(2) CERTIFICATE

    I certify that, in compliance with Local Rule 7.1(a)(2), I conferred with plaintiff and have attempted in good faith to resolve or narrow the issues that are the subject of this motion.

                                                /s/ Joshua N. Garick_____
                                                Joshua N. Garick (BBO #674603)

Dated: January 20, 2026