UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

JOSE MARIA DECASTRO,

    Plaintiff,

v.

JOSHUA ABRAMS,

DALE HILLER,

KATE PETER,

and JOHN DOES 1–5,

    Defendants.

Civil Action No. 1:25-cv-11610-ADB

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**INTRODUCTION**

This action arises from defamatory statements first published during a June 10, 2022 YouTube broadcast and later republished, reaffirmed, and expanded during a June 18, 2025 YouTube livestream. Those statements accused Plaintiff of criminal conduct, fraud, extortion, fabricated professional history, and vexatious litigation. Defendants do not deny that these statements were made.

Defendants' Motion to Dismiss rests on a distorted account of the procedural history and an incorrect view of defamation, personal jurisdiction, and timeliness. The prior case proceeded solely on copyright theories after defamation claims were removed for procedural reasons under Federal Rule of Civil Procedure 41. No court has ever adjudicated the truth or falsity of Defendants' defamatory statements.

The operative complaint pleads viable defamation claims based on both republication and new defamatory statements, establishes personal jurisdiction in Massachusetts, plausibly alleges damages exceeding the jurisdictional threshold, and is supported by transcripts and documentary evidence. The motion should be denied.

## STATEMENT OF RELEVANT FACTS

The facts below establish original defamation, republication, new defamatory statements, coordination, actual malice, jurisdictional contacts, and concrete harm.

### A. The June 10, 2022 Broadcast (Original Defamation)

On or about June 10, 2022, Defendants Joshua Abrams and Dale Hiller participated in a YouTube broadcast in which they made false statements accusing Plaintiff of operating Ponzi schemes, engaging in blackmail and extortion, committing criminal acts, and threatening third parties. (June 10, 2022 Transcript at 3:25–5:00.) These statements were presented as fact, not opinion, and caused immediate reputational harm.

### B. Procedural History and Non-Adjudication

Plaintiff filed suit in 2022 asserting both copyright and defamation claims. After Defendants answered and declined to consent to dismissal under Rule 41(a), Plaintiff filed an amended complaint removing the defamation claims as a procedural necessity. The case proceeded solely on copyright theories and was dismissed on those grounds. No court has ever evaluated the truth or falsity of Defendants' statements, the existence of actual malice, or any other element of defamation. (DeCastro Decl.)

**C. June 18, 2025 Livestream (Republication and New Defamatory Statements)**

On June 18, 2025, Defendant Abrams published a YouTube livestream titled "BETA DELETE LAWZ SUED ME AND LACKLUSTER... AGAIN!" The broadcast exceeded 34,000 views. (FAC ¶¶ 8, 27–29.)

During this livestream, Abrams both republished the June 10, 2022 defamatory accusations and made new defamatory statements that had never previously been asserted.

*First*, Abrams replayed and reaffirmed the 2022 accusations of Ponzi schemes, blackmail, and extortion, presenting them as true and offering no disclaimer or correction.

*Second*, Abrams fabricated a new story about Plaintiff's professional history, claiming that Plaintiff "was the original Black Bison Ranger but was kicked off the show before filming even commenced due to wild accusations" and that "cast also reports being threatened by [DeCastro]." (Transcript at 6:04–6:21.)

*Third*, Abrams newly accused Plaintiff of filing "close to 11 lawsuits" and described Plaintiff as someone who would "vexatiously litigate the hell out of you." (Transcript at 1:03:47, 1:05:51.)

4

*Fourth*, Abrams accused Plaintiff of committing "serious felonies" and referenced an alleged "criminal record." (Transcript at 4:53.)

**D. Evidence of Coordination and Actual Malice**

During the June 18, 2025 livestream, Abrams stated:

> *"I spoke to Lackluster the other day. He called me to get the information on my attorney because it's just easier for us to join forces... my attorney is going to be representing [Dale Hiller] as well."*

(Transcript at 15:22–15:35.)

This statement supports an inference of coordination between Defendants Abrams and Hiller in connection with the defamatory publications.

Abrams displayed Plaintiff's bank records during the broadcast while falsely claiming Plaintiff had not paid. Those records showed Plaintiff paid $386.06 for a hotel room. Plaintiff also possesses Cash App records showing a $205 payment to Abrams on May 28, 2022. Abrams nonetheless repeated accusations of nonpayment.

Throughout the livestream, Abrams solicited donations to fund his legal defense, stating he needed to "pay my lawyer five grand" and displaying PayPal, Cash App, and Venmo links. (Transcript at 15:35–15:42, 25:17–25:22, 46:36–47:13.) While soliciting these funds, Abrams twice explicitly directed his audience to unsubscribe from Plaintiff's channel:

> *"If you support Chile [fuck] you and the Chile horse that you [fuck] rode in on go hit the unsubscribe button." (Transcript at 22:42–22:47.)*

*"If you like Chile or you intend to watch him hit the [fuck] unsub button don't ever come back to this [fuck] channel." (Transcript at 29:27–29:33.)*

This conduct demonstrates not only defamation but intentional interference with Plaintiff's business. Abrams was simultaneously raising money for himself while actively directing his audience to economically harm Plaintiff. Plaintiff lost 402 subscribers within days of this broadcast.

**E. Documented Harm**

Plaintiff's YouTube Analytics demonstrate immediate harm following the June 18, 2025 broadcast. On June 17, 2025, Plaintiff had 655,565 subscribers. By June 20, 2025, Plaintiff had 655,163 subscribers, a loss of 402 subscribers in three days. This loss is a proxy for broader reputational and revenue harm.

## ARGUMENT

**I. THE DEFAMATION CLAIMS ARE NOT TIME-BARRED**

**A. No Prior Merits Adjudication**

Defamation claims were never adjudicated on the merits. Claim preclusion requires a final judgment on the merits. *Kobrin v. Bd. of Registration in Med.*, 444 Mass. 837, 843 (2005).

**B. Republication and New Defamatory Statements in 2025**

Republication of defamatory material restarts the statute of limitations. *Ogden v. Ass'n of the U.S. Army*, 177 F. Supp. 498, 502 (D. Mass. 1959). Independent new defamatory statements in 2025 separately support liability and timeliness. *Firth v. State*, 98 N.Y.2d 365, 370 (2002).

## II. CLAIM PRECLUSION DOES NOT APPLY

Copyright and defamation claims do not share elements. *Feist Publ'ns v. Rural Tel. Serv.*, 499 U.S. 340, 361 (1991); *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629–30 (2003). Claims arising from later republication and new statements could not have been litigated previously. *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955).

## III. DAMAGES PLAUSIBLY EXCEED $75,000

At the pleading stage, Plaintiff need only allege damages in good faith. *Abdel-Aleem v. OPK Biotech LLC*, 665 F.3d 38, 41 (1st Cir. 2012). Accusations of criminal conduct and fraud constitute defamation per se. *Ravnikar*, 438 Mass. at 630. Defendants themselves previously asserted defamation counterclaims that failed for jurisdictional amount. (DeCastro Decl. ¶ 7.)

## IV. PERSONAL JURISDICTION OVER DEFENDANT HILLER

Defendants Abrams and Peter are Massachusetts residents. Hiller's West Virginia residency does not defeat jurisdiction.

Hiller purposefully availed himself of Massachusetts by coordinating with Massachusetts defendants, knowingly participating in Massachusetts-based broadcasts, and directing defamatory conduct through a Massachusetts-centered media enterprise. *Calder v. Jones*, 465 U.S. 783, 789–90 (1984).

The broadcasts were produced and disseminated from Massachusetts. Massachusetts is the center of gravity of the tortious conduct. Hiller cannot evade jurisdiction by appearing remotely. Acceptance of such a theory would permit intentional tortfeasors to evade jurisdiction through forum-centered media simply by not being physically present. Courts do not permit that result.

Additionally, conspiracy jurisdiction applies. Where defendants coordinate tortious activity with forum residents, the forum contacts of co-conspirators may be imputed for jurisdictional purposes. *Noonan v. Winston Co.*, 135 F.3d 85, 93 (1st Cir. 1998).

At minimum, jurisdictional discovery is warranted.

## V. SANCTIONS ARE UNWARRANTED

Defendants seek extraordinary relief on an ordinary Rule 12 record. They request sanctions under the court's inherent power, citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991). That standard requires conduct that is "bad faith, vexatious, wanton, or oppressive." *Id.* at 45–46. Defendants cannot meet this burden.

### A. The Quoted Statements Were Defensive, Not Vexatious

Defendants selectively quote Plaintiff's prior statements without context. At the time, Plaintiff operated a channel with approximately 30,000 subscribers. He was being defamed by Defendant Hiller—who had over one million subscribers and earns approximately $30,000 per month—and by Defendant Abrams, who had over 100,000 subscribers and received family support for his living expenses. Meanwhile, Plaintiff was traveling the country, staying in Airbnbs, with no stable residence and limited resources. The power imbalance was stark:

wealthy, established creators with massive platforms were defaming a smaller creator to an audience thirty-five times his size.

Plaintiff's statements were not threats to harass through frivolous litigation. They were a warning: retract the defamatory statements or face a lawsuit. There is a legal distinction between threatening harassment and warning of legitimate legal action. When a pro se litigant tells larger, wealthier creators that he understands litigation and will not be bullied into silence, that is self-defense—not sanctionable conduct. Of course Plaintiff cared whether he won or lost. Any reasonable person would. The quoted statements reflect frustration at being defamed, not a vexatious scheme to abuse the courts.

### B. Plaintiff Made Extensive Pre-Litigation Efforts

Plaintiff contacted Defendant Hiller on multiple occasions over nearly three years seeking retraction of the false statements. Defendants declined. This lawsuit was filed only after informal resolution efforts proved unsuccessful. A vexatious litigant files immediately. Plaintiff waited until the final weeks of the limitations period, hoping Defendants would do the right thing. They did not.

### C. The Defamation Continues

Defendants' conduct is not historical. On June 18, 2025, Defendant Abrams published a new YouTube broadcast continuing the defamation. Plaintiff amended his complaint to include this new conduct. Defendants cannot credibly seek sanctions for a lawsuit responding to ongoing tortious behavior. The harm is not speculative or stale—it is active.

### D. This Case Is Supported by Concrete Evidence

Defendants seek sanctions while simultaneously conceding that the statements at issue were made. Plaintiff has submitted transcripts, YouTube analytics, and documentary evidence supporting each claim. The First Amended Complaint pleads specific defamatory statements with timestamps, establishes republication and new defamatory content in 2025, and documents measurable harm. This is not a frivolous case filed to harass. It is a legitimate defamation action supported by evidence.

**E. Sanctions at the Pleading Stage Are Premature and Unwarranted**

Sanctions under the court's inherent power are reserved for "the most egregious misconduct." *Zappin v. Comfort*, 49 F.4th 69, 79 (1st Cir. 2022). Courts do not impose sanctions simply because a defendant believes a case lacks merit. *See Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464, 467 (1st Cir. 1993). The proper remedy for a case that fails to state a claim is dismissal—not sanctions.

This case has not yet proceeded to discovery. Imposing sanctions at this stage would improperly substitute summary punishment for the ordinary adversarial process. Plaintiff intends to see this matter through to resolution. If Defendants believe the claims lack merit, they may test that theory through the ordinary course of litigation.

The sanctions request appears designed to chill a defamation claim before discovery can test the truth of Defendants' statements. This Court should not permit that result. The transcripts demonstrate that Defendants were simultaneously monetizing defamatory statements, directing economic harm at Plaintiff, and predicting sanctions they now seek to impose. Defendants ask this Court to sanction Plaintiff for filing a defamation suit against parties who admittedly made the statements at issue, based on out-of-context quotes from years ago, while ignoring the power

imbalance that prompted those statements, Plaintiff's years of efforts to resolve this matter without litigation, and Defendants' ongoing defamatory conduct.

The sanctions request should be denied.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied.

Respectfully submitted,

/s/ Jose Maria DeCastro
JOSE MARIA DECASTRO
Plaintiff, Pro Se

5350 Wilshire Blvd.

P.O. Box 36143

Los Angeles, CA 90036

(310) 963-2445

chille@situationcreator.com

Dated: January 30, 2026

## CERTIFICATE OF SERVICE

I certify that on January 30, 2026, I served a copy of the foregoing via email on all counsel of record:

Joshua Garick, Esq.

Law Offices of Joshua N. Garick, P.C.

joshua@garicklaw.com

/s/ Jose Maria DeCastro

JOSE MARIA DECASTRO

5350 Wilshire Blvd.

P.O. Box 36143

Los Angeles, CA 90036

(310) 963-2445

chille@situationcreator.com